May it please the Court, I'd like to reserve three minutes for rebuttal. I'm Brian Matisse on behalf of the Plaintiff and Appellant James Savina. Your Honors, this is an age discrimination claim brought by the Plaintiff James Savina under the Age Discrimination in Employment Act of 1967, 29 U.S.C., Section 623, and an analogous Arizona State Court claim. The issue on appeal is straightforward. It's whether the district court erred in granting summary judgment by acting as the trier of fact and essentially weighing the evidence instead of determining whether the evidence, given all reasonable inferences in favor of the plaintiff, established a genuine issue of fact for trial. Your Honors, there were three types of evidence that were submitted by the plaintiff in this case to demonstrate that there was the asserted reason by Robert Reiser & Company was pretextual. Initially, it's important to understand that Mr. Savina was a salesman who had been employed by the Reiser & Company for some nine years. He was 58 years old, and he was having the best sales year of his life, having sold $1.35 million in product in a 10-month period and was on track for a $1.6 million year, which would have been his best year ever. Despite these remarkable sales numbers, he was terminated, and the only reason that was given by Robert Reiser & Company was that they were, quote, dissatisfied with his performance, unquote. Now, both the the well, the district judge in this case assumed without deciding that the plaintiff was able to demonstrate a prima facie case of age discrimination, and that is pretty clearly established because Mr. Savina was 58 years old, well over the protected class limit of 40 for the ADEA. It's pretty tough to argue that it's too old when you're before a court panel like ours. I'm the youngest guy here, and I'm older than he is. Let me ask you, was that the only statement that was made, dissatisfied with his performance, not low performance or nonproductive? There was some discussion he didn't go to see some of the people as often as he would, didn't produce sales of associated machinery. There's a lot of things in the brief that are talked about, but the actual statement is he's just, they were dissatisfied with his performance? That's correct, Your Honor. In fact, you're, Judge Wallace, you're correct that there were some 220-some different alleged statements of fact that were presented. It was more of a shotgun approach by Reiser & Company, and they didn't focus on any of those. And in our response to summary judgment, Mr. Savina presented affidavits disputing virtually every one of those 224 specific items, none of which were directly asserted by Reiser as, I mean, they wouldn't hang their hat on any of them, as the reason. They just said they were dissatisfied with his performance, which was a bit shocking given that he was a salesman and having the best year of his career. In particular, Your Honor, I want to focus on one of the reasons that was given by Reiser in their briefing, never to Mr. Savina, but just in their briefing, that they thought that his territory could have over $1.5 million in sales. Well, demonstrating how pretextual this is, first of all, he was on track for more than $1.5 million at the time of his termination. Second of all. That's because he got 1.3 in 10 minutes, 10 months. 1.35 in 10 months, right. And in addition, Judge Walz. He had a goal. He had an individual goal he had set for himself, which was larger than the goal that they had suggested for him. Wasn't he on track to meet that goal? Easily. Mr. Howard had suggested at the 2005 Cancun meeting a $1.2 million goal, and he set $1.4 million for himself. So he exceeded Mr. Howard's goal, and he was on track for exceeding his goal, which they thought was too high. But the $1.2 million, as I recall, wasn't that partway into the year that because of his wife's illness his numbers were very low already for the first half of the year? That's correct. That was in 2005, the first half of the year his wife is very ill, so he had to take a lot of time off. Is there any indication that 1.2 or 1.4 was viewed by the company as an appropriate quota for a normal year? There was no indication one way or the other in the record, Your Honor. I would point out that there is some indication in the record that we presented that the company's goal was actually somewhere over $750,000, because his commission quota was he would receive a commission bonus of 2 percent of sales if he received at least $750,000 in sales. And if he exceeded $1.5 million, he would receive an additional bonus, bringing his total commission to 3 percent. So that's circumstantial evidence that Reiser believed that his goal should be somewhere in the vicinity of $750,000 to $1.5 million. And he had consistently in all prior years, with one exception, been in that range of $750,000 to $1.5 million with no complaints by Reiser and company. Your Honor, I also want to focus on the other types of evidence that was introduced by Mr. Savina. There was direct evidence of discriminatory animus by Mr. Mellon. The timing is important here because Peter Mellon became president of the company in 2003, and shortly after being president of the company, he held a sales meeting where he stated the sales force is getting long in the tooth and we need new blood. And immediately after Mr. Mellon came in, the numbers started changing from a sales force that was predominantly over 50 to a sales force that was predominantly under 50. Forty-five percent of involuntary firings after Peter Mellon was became president were people over 50, and only 9 percent of firings were people under 40. Compare that to the number of new hires. Only 14 percent of new hires were over 50 after Peter Mellon became president, whereas 30 percent of the hires were under the age of 40. We've had the long in the tooth statement made several times. Apparently, that's something that corporate people talk. We've had it in many cases. But as I understand, the district court thought these were just stray remarks and you couldn't really rely on them, and many of our cases have said the same. Why is this different? That's correct, Your Honor, that the district court did say it was a stray remark that couldn't be relied on. What's different here is it's not the only evidence of discrimination. Combined with the other evidence of discrimination, the long in the tooth remarks combined with the statistical evidence that Reiser acted on that to start terminating involuntarily people over the age of 50, combined with the indirect evidence of pretext, which is the excellent performance Mr. Savino was having, the combination of all of that is important. If you look at the Diaz case, which you're moving towards a circumstantial case rather than direct evidence case. There is mostly circumstantial evidence, because there's circumstantial evidence based on the solid performance of Mr. Savino as well as the statistical evidence here. But there's also some direct evidence, that long in the tooth comment, combined with Mr. Weiss's statement. Now, Mr. Weiss was the liaison. He stated that there was a knowledge among the sales force that if you're over 50, you have a target on your back. The district court dismissed that evidence, which is also direct evidence of discrimination, as being hearsay. And it would be true if it was offered for the truth of the matter asserted. But in this case, it was similar to the stray remark in the Chuang case where there was an offensive comment. Now, if that's not being offered, I saw the argument in your brief, and I still don't understand it. How is there's no point in offering it up unless it's believed to have some truth in it. No. It's offered for the indifference and the knowledge of management of this pervasive attitude that there's a belief that people over 50. If what he says isn't true, then there's no proof of knowledge of management of anything. Well, there's a indifference, Your Honor. In the Chuang case. What is it that he said? Mr. Weiss said to Mr. Reiser, and Mr. Weiss was the company liaison, that everyone over 50 in this company has a target on their back. Now, unless it is taken to be true, what probative evidence does that statement have at all? It's the indifference of management to the fact that there is this comment that's not being addressed. How does that reflect the indifference of management? All you know is that it's said to your client. Unless your client's management, the fact that Mr. Weiss says that doesn't prove anything. Well, by analogy, Your Honor, in the Chuang case, there was a comment made in the presence of a dean about Chuang's case. But your client's not the dean. The fact that your client doesn't respond and say, I'm management, don't talk like that, isn't probative of anything, because your client's not management. Mr. Weiss is the liaison to management, however. So you don't know if Mr. Weiss is making that comment to management or not. There's no proof of that. Well, he is the liaison to management. Stop. Do you have any evidence that Mr. Weiss made that comment to management? No, I do not. So how can inaction of management prove anything, because you don't know that management ever heard it from Mr. Weiss? Unless the statement is taken to be true, there is no probative value in the statement. So why is it not inadmissible hearsay? Only, well, I would, if there is general knowledge in the company, and to the extent that- But you can't prove that off of that statement. You have one person, Mr. Weiss, saying to your client this statement. That doesn't prove a general attitude or understanding of the company that anybody over 50 has got a target on his back. I think, Your Honor, you are correct that there needs to be the inference made that this liaison person would relay that to management. Without that additional element, that's correct. But nonetheless, there is that inference here. Okay. It's very difficult in these situations, Your Honor. It's not particularly powerful evidence to begin with. You might better spend your time on something else. The important point that I also want to raise is that when there is a shotgun approach like this, where Reiser raises 224 different asserted grounds, and we present Mr. Savino presents very specific affidavits from customers that dispute and deny each of those points, that is circumstantial evidence, once again, that the asserted reasons offered are pretextual. For example, if a company says 224 different reasons why, and we present affidavits saying, no, none of that is true, the fact that maybe one or two haven't been rebutted is nonetheless evidence that there's at least the overwhelming majority of these statements were untrue, which is evidence of pretext here. Your Honor, I believe what this boils down to is if this Court is going to give weight to the statement that on summary judgment there just needs to be sufficient evidence to establish a triable issue of fact, then we need to consider the totality of all the evidence presented here, and in the circumstances of this case, given the good sales performance, the lack of a clear-cut reason for his termination, the statistical evidence, as well as the stray comment, which, although, as Judge O'Connor said, is not the case, is not the case. Thank you. Roberts. They please the Court. Andrew Orsmond on behalf of the Appellee Robert Riser and Company. I want to start by addressing an issue of standards. To defeat a motion for summary judgment, the plaintiff here has to raise a genuine issue of material fact, something we all agree on. And as this Court recognized in the Nids v. Schindler elevator case, the criteria of genuineness and materiality are distinct in a way that's important for purposes of this case. Genuineness refers to the quantum of evidence that the plaintiff has to produce to defeat the defendant's motion. And it has to be sufficient evidence that a reasonable jury could return a verdict for the non-moving party. So if evidence is merely colorable, quoting from the Schindler case, or is not sufficiently probative, then summary judgment is appropriate. Materiality, by contrast, is determined with respect to the substantive law at issue, in this case, the ADEA and its Arizona State analog. And on this, I want to point out the impact of the Supreme Court's decision last year in Gross. Under the holding of Gross, which was decided late in 2009, a plaintiff must prove that age was the but-for cause of the challenged adverse employment action, which means a mixed motive case, as it applies to the ADEA, is gone. So there's that much of a higher bar that Mr. Savino would have to overcome at trial. Now, that brings us to a difference between the two parties here in the briefs on what the standard is for the court to apply looking at the evidence. The appellant suggests that the correct standard is a very little evidence standard, while Reiser says that the correct standard is specific, substantial evidence. This court, in fact, has resolved that dispute previously in the Godwin case, which is cited in Reiser's reply brief. There, the court recognized the confusion that has crept into the case law sometimes on the subject and harmonized the two standards by explaining that the very little evidence standard only applies where the plaintiff can show direct evidence of discrimination. Where the defendant is relying on circumstantial evidence, the specific, substantial test applies. So it's not enough, again, for the plaintiff to simply show one or two instances where there might be a dispute as to the facts. So to answer that question, we have to begin by asking, does the appellant here show direct evidence? And I think, as the court below concluded, this court has to conclude no. Direct evidence is evidence that's related to the challenged employment decision, which, if believed, proves the fact of discriminatory animus without inference or presumption. It's contrasted with a stray remark, which at best might be circumstantial evidence or might not be probative of anything relevant at all. This court has, on a number of occasions, considered the distinction between direct evidence and stray remarks. Many of the relevant cases are cited on page 24 of Reiser's brief, but I would summarize the holdings as follows. There are really four elements. One, whether the comment in question is ambiguous as an indicator of discriminatory animus. Two, whether the comment is uttered by a person responsible for the adverse employment decision at issue. Three, whether the comment is related in time and subject matter to the decisional process. And four, whether there are multiple comments or only a single statement. Let me focus you on a problem I'm having with the case. I appreciate the rendition, but we're pretty well acquainted with the law. If this case came before us, had been tried, and this was the record, I think you'd have a pretty strong case that you'd get affirmed. But we're not at that stage. We're at summary judgment. The judge decided that there wasn't enough material evidence to go to trial. And that puts your position a little more difficult. There used to be a day when no judge gave summary judgment. Now they're giving some summary judgments, which I understand is appropriate. In this case, the question that lingers in my mind, is any of this evidence that has been put forth, is there a material fact that would go to the jury that if they thought it was persuasive, they would go out the other direction? That is, that there would be sufficient for them to worry about. And the one that makes me worry about is his production. He was apparently released because of his poor performance. And here we have a person over 10 months who's got $1.3 million in sales, is going to have a superb year. Most employers would say, go get him, we're making good money. But instead, he's fired. So it at least raises the question, was it really performance that he was fired for, when you can put that evidence before the jury? Now whether they're going to accept it or not is another issue. But it seems to me that's a material fact that should worry us as to whether the judge started too soon. I'd like to speak to that. First, I want to draw a distinction between the numbers that the appellant cites and how they were actually used. There is a difference between a commission goal, which is simply a number that Reiser set up, and in fact, in Mr. Savina's case, way back at the very beginning of his employment, for when he would begin to draw a commission. And what the company actually came to believe was the potential of the territory in which he was operating. And here, I would point to the testimony of both Mr. Amaral and Mr. Howard, who said it wasn't a matter of the number. It was a matter of how the number was being achieved. Mr. Howard, in fact, presented ample testimony in which he said what was disturbing him was that many of those sales in those last two years were being achieved by other people. In fact, the affidavit of Frank Smith was introduced here as a perfect example of Mr. Savina's, frankly, disingenuousness when it comes to talking about those numbers. Because he takes credit for sales that were accomplished by people who weren't even, by the way, engaged in selling. Well, I think that would be fine if it's proven. But the issue is, is it proven? I mean, you're saying it's not very good because we've got this evidence, and that's what fact finders are there for. Why isn't that just demonstrate that this should have gone on to the trier of fact? Because, Your Honor, at no point did Mr. Savina, in his submissions below, rebut that evidence. There is nothing to rebut the affidavit of Frank Smith. Did the company not credit him with these sales? What the company did when it counted up sales is they did it in the normal way. It credited him with these sales? It credited his territory with the sales, Your Honor, yes. Okay. Well, doesn't that suggest a factual dispute? There may be a further explanation. Well, somebody else really did the work. Is there any evidence in the record with regard to the participation of the specialists in assisting sales agents assigned to other regions? What proportion of sales from other regions might have entailed involvement of one of these specialists? Any evidence like that? The evidence is in the form of? A bottom line opinion. Basically, you're asking us to take the company's word for it, aren't you? Well, no, Your Honor. What I'm asking you to take is the criteria that Mr. Howard testified he used to make the decision that he was dissatisfied with Mr. Savina's performance. Something odd to you. We've got sales records for five years. This one isn't a complete year. It's a partial year. And that one partial year, he has higher sales than any other time. And that's when they decide to count him? Because of poor sales performance? What about the preceding four years when his sales were lower? Because what happened here, Your Honor, is Mr. Amaral began traveling with Mr. Savina in 2006. And in the course of getting finally an up-close-and-personal view of what was going on, he realized, number one, how much was being missed. And number two, how much of that last year's sales was accomplished not because of Mr. Savina's efforts, but because of Mr. Amaral's efforts, because of Mr. Smith's efforts, because of the efforts of other people. Mr. Howard is entitled— Was there any evidence put into the record with regard to what sales were achieved in that region by somebody else subsequently? I'm sorry, Your Honor? Was there any evidence in the record about what sales level was achieved in that region subsequently? Subsequently after Mr. Savina left? Right. No, there isn't, Your Honor. That's not something that's been put into the record. I'd like to turn, though, to the point that Mr. Savina makes or that the appellant makes with respect to circumstantial evidence. He says that out of 249 facts, which somehow that number or the number of undisputed facts asserted by Reiser makes a difference here, that they have rebutted them. And I would submit, as the court below did in its analysis, that if you go customer by customer and you look at what Reiser said about the customer and what Mr. Savina responded, he does not respond to the issues that Reiser brought up with respect to each customer. Now, the district court highlighted the three customer affidavits, which I think are important, but I'd like to look at the rest of the assertions that Reiser puts forward. What the district court said was he brings in the affidavits of customers who say, we were satisfied with Mr. Savina's performance. We never complained about Mr. Savina. We enjoyed working with him. As to those three customers, Reiser never alleged that the customer complained about Mr. Savina or that they didn't enjoy working with him. They made specific allegations about those customers, which went completely unrebutted, in fact, completely unresponded to in those customer affidavits. And I think that's what was moving the district court, was the realization that, again, point by point, customer by customer, issue by issue, Mr. Savina simply doesn't respond to what Reiser was saying. I do want to speak briefly to the point that was made that Mr. Savina was only told that the company was genuinely dissatisfied with his performance. In fact, if you look at volume four of the excerpts of record in tab U, you will see the notes that Mr. Howard made of his call with Mr. Savina at the time of the termination, again, undisputed. And those notes point to a discussion about specific customers. In addition, Mr. Savina never denies or rebuts the fact that when Mr. Amaral first came out to travel with him, he thought he was there to fire him. That Mr. Mellon, in a sales meeting, told him, if you don't improve your performance, you're not going to be here next year. And that when Mr. Howard called him to fire him, he said, I knew this has been coming. I've been working up the nerve to quit. None of those facts are unrebutted. Mr. Savina never denies them because he couldn't. How does that last statement, I knew this was coming, help you? I will admit that standing alone, it could also be seen as an interpretative his idea that, well, I know that I'm over 50, I might get fired. But in the context of all of the other testimony from Mr. Howard and Mr. Amaral and Mr. Savina's own admissions as to the confrontations that he had with Mr. Amaral over business issues, as to the times in which he was told that if his performance didn't increase, he was in jeopardy. Isn't this one more thing the jury should sort out instead of us? I don't think when you look at the specific substantial standard, that it comes anywhere close to the type of evidence that a jury could consider here. Again, remembering that what Mr. Savina needs to show is that age is the but-for cause of his termination. Two other minor points I'd like to make. One, Mr. Savina argues that he got in trouble for using specialists and technicians when that was what he was supposed to do. Again, he doesn't respond to the issue. What the testimony clearly shows is that he was not faulted for using specialists and technicians, it's how he used them. By his own admission and the admission of his one affiant, Roger Baker, the proper thing for a technician or a specialist to do was to come in and assist the salesman in a sale. When Mr. Savina used specialists and technicians that way, he was fine. The problem here was that people like Frank Smith and the baker who testified, who if you'll excuse me, I forget his name off the top of my head. What they were saying was... Mullins. Ron Mullins. Thank you, Your Honor. What Mullins was saying, and he testified very clearly on this, was I was having to go in and follow up with customers whose problem was no one ever called me back. No salesman ever called the customer back. And so Mullins went in and took it upon himself to close the sale. He was disappointed with that because he felt that Mr. Savina wasn't following up on leads in this area. And so what Mr. Howard was saying is, that Mr. Savina is having technicians like Frank Smith, bakery specialists like Ron Mullins, go in and do the entire sale and complete and close the sale, which as Mr. Savina admits is not the proper role for a technician or a specialist. I want to take my last 45 or so seconds to briefly speak about the issue of statistics because the appellant gets into the issue of specifics. And I think this court has been very clear in the past that statistics in discrimination cases must show a stark pattern of discrimination unexplainable on grounds other than age. I don't think Savina's statistics come anywhere close to that standard. In fact, in the Rose case, this court noted that where the average age and mix of employees, both prior to and after the consolidation were approximately the same, there simply is no evidence of discriminatory animus. So what we have here is 11 terminations in nearly six years that we're looking at, where five of them were for people over 50 and five of which were for people under 50. And in that same period, we have 35 new hires, five of which are over 50, 18 of which are between 40 and 50, and only 11 are under 40. So you have a company that consistently hires older employees. And employers... You're over your time. Do you have any final thing to say? Yes, Your Honor. I just, in closing, I again want to come back to the issue of standards. Once again, understanding that at best, given that there is no direct evidence in this case, that this is a substantial and specific standard, there is no way that Mr. Savina has even come close to meeting that standard. Thank you. Rebuttal? Your Honors, I'd like to address a couple of points. The first one is the Gross case, which was not included in the briefing. I want to point out the Gross case does not apply here because that was an ADEA mixed motive case. This is not a mixed motive case. If it had been a mixed motive case, then yes, the Gross case would apply in that there would need to be a showing of but-for causation. But in this case, there is no other non-discriminatory reason that the parties agree applies in some way. So because it's not a mixed motive case, Gross doesn't apply. The second point I want to make is the question of the potential of the territory and how the specialists are being used. Reiser states that Mr. Savina did not rebut the testimony of Mr. Smith, the affidavit of Mr. Smith. In fact, Mr. Baker's affidavit states that Mr. Savina used the specialists correctly by following up on the leads of that particular specialist. And in fact, if you look at Mr. Smith's affidavit, and not the self-serving paraphrasing of the affidavit by Reiser, Mr. Smith's affidavit says that I went to this one particular client. I found out that they had a need for a particular product while I was servicing their product. I informed them of this new product, forwarded it to Mr. Savina, and Mr. Savina closed the sale. Mr. Smith's affidavit, if you look at it closely, it looks like what the issue was is that he didn't feel he was properly thanked by Mr. Savina, not that he wasn't following up on it. And if you counter that with Mr. Baker's affidavit, which is that's exactly how you're supposed to use these specialists, it demonstrates once again that Mr. Savina was following proper procedure and the example is pretextual. I also want to follow up on the statement that was made at the end that Reiser was consistently hiring older employees. A couple of slight misstatements I want to point out. First of all, the evidence that was presented consisted of evidence over a three-year period from 2003 when Mr. Mellon took over as president forward. That's the key period, because no one doubts that Roger Reiser, when he was president, did hire older employees, older salespeople. But Mr. Mellon, when he took over in 2003, did not. And that's what the statistics show, that from 2003 on, only a very small percentage of employees hired were above the age of 50, only approximately 9 percent. No, I take that back. Only 14 percent were over 50, whereas 45 percent of those individuals were fired. Finally, I want to address the question of Mr. Amaral traveling with Mr. Savina and that Exhibit U. The Exhibit U is nothing more than Mr. Amaral's notes from the termination meeting of Mr. Savina. And in fact, the inference that can be drawn from that is that Mr. Savina reasonably believed that Mr. Amaral was following him, bird-dogging him, for the standpoint of taking over his territory. Are there no further questions, Your Honors? I do. Mr. Judge Hawkins, please. Looking at the standard, when there's a burden on part of the employer to produce evidence of a nondiscriminatory reason, we have spent quite a bit of time as to whether that was a legitimate question. In fact, on that. But even assuming that there is a legitimate question on that, isn't there still the burden on the part of the plaid to show that there was sufficient evidence of discrimination based on age? So that's really what we're focusing on, I think. Is there a reasonable basis for saying that there's disputed evidence or disputed issue of fact on the question of whether there was discrimination on age? That's correct, Your Honor. There is a burden always on the plaintiff to show there's discrimination on age. And that can be satisfied in two ways, direct or indirect. And at the initial burden on the plaintiff was satisfied by demonstrating that Mr. Savino's performance was satisfactory and that he was replaced by an individual far younger. That is the initial prima facie burden that we have established. At the pretext analysis, we need to go further and we need to present some evidence that when taken together is sufficient to rebut the legitimate nondiscriminatory reason that is offered. Part of the problem we're having is, is that there's no clear reason given, just, quote, unsatisfactory performance. The evidence of discrimination based on age could be that they shouldn't have terminated him for purposes of his performance. But that wouldn't be enough if there isn't discrimination based on age. Well, there is when it is combined with both the statistical evidence and the remarks of Mr. Mellon, it indicates that the reason he was terminated was not because his performance was unsatisfactory, but it was based on age and this tendency beginning with Mr. Mellon to replace the older workers with the younger workers. Thank you. Thank you. Thank both counsel for the arguments. The Savina case is submitted for decision.
judges: Wallace, Hug, Clifton